**INNOMED LABS, LLC, Plaintiff–Counter–Defendant—Appellant,**

v.

**ALZA CORPORATION, Defendant–Counter–Claimant—Appellee,**

**Johnson & Johnson, Defendant.**

No. 02–9491.

United States Court of Appeals, Second Circuit.

May 14, 2004.

Paul F. Corcoran, Davis & Gilbert, LLP (Jennifer Tafet Klausner and Jennifer L. Schatzman, on the brief), New York, NY, for Appellant.

Harold P. Weinberger, Kramer Levin Naftalis & Frankel LLP (Jennifer L. Rochon, on the brief), New York, NY, for defendant-counter-claimant-appellee.

Present: SOTOMAYOR, WESLEY, Circuit Judges.*

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Baer, J.) it is hereby ORDERED, ADJUDGED, AND DE-CREED that the judgment of the district court is AFFIRMED.

Plaintiff-appellant Innomed Labs, LLC ("Innomed") appeals from the judgment of the United States District Court for the Southern District of New York (Baer, J.), dismissing its claims against defendant-appellee ALZA Corporation ("ALZA"), for breach of contract, tortious interference with prospective business advantage, and price discrimination in violation of the Robinson–Patman Act, 15 U.S.C. § 13(a) (2000). The facts and procedural history of this lawsuit are recounted in detail in the written opinion issued in conjunction with this summary order.[1] Familiarity with the facts is therefore assumed.

---

* The Honorable Jon O. Newman, who was a member of this panel, recused himself following oral argument, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(2).

1. The accompanying opinion disposes of Innomed's challenges to various aspects of the

Innomed challenges the district court's grant of summary judgment in favor of ALZA on the majority of Innomed's claims for breach of the Distribution Agreement and the January 26 agreement, as well as its tortious interference claim.[2] The crux of Innomed's argument is that the court erroneously concluded that, as a matter of law, ALZA was entitled to terminate the Distribution Agreement on March 26, 2001. Innomed contends that issues of fact exist as to whether ALZA's termination was justified, necessitating reinstatement of its contract and tortious interference claims. We disagree.

■ Innomed's most persuasive argument is that it was entitled to the extended cure period provided in § 12.2(c) of the Distribution Agreement, which specified that if a party's breach was "of a nature such that it cannot be cured within 60 days despite diligent efforts," the party would be entitled to "a longer period as is reasonably necessary to cure such breach using diligent efforts." Although the district court held that, as a matter of law, the extended cure provision was not available for breaches involving nonpayment, because nonpayment can always be cured within the initial sixty-day cure period, we need not resolve this question. Even if, as Innomed asserts, the district court's conclusion was erroneous, Innomed has presented no evidence that its *breach* – as opposed to its chosen method of curing that breach – was of such a nature that it could not be cured in sixty days through diligent efforts. Innomed has therefore failed to raise an issue of fact as to its entitlement to the extended cure period.

■ Innomed next argues that the standstill agreement initially executed on January 24, and repeatedly extended until March 26, tolled the running of the sixty-day cure period provided in the Distribution Agreement, and that because the parties entered into the initial standstill agreement four days before the end of the cure period, Innomed was entitled to four additional days to cure the breach beyond the expiration of the last standstill agreement on March 26, 2001. We agree with the district court, however, that the language of the standstill agreement unambiguously indicates that the parties agreed simply to postpone the date on which the termination would become effective, rather than to toll the running of the cure period. *See Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2d Cir.1995) (holding that where the language of the contract is "unambiguous and conveys a definite meaning," the court may decide the meaning of the contract as a matter of law) (internal quotation marks and citations omitted). Although Innomed attempts to create issues of fact by relying on deposition testimony that it argues suggests that the parties intended to toll the cure period, "[p]arol evidence cannot ... be admitted to show intention independent of an unambiguous written instrument." *Sunniland Fruit, Inc. v. Verni,* 233 Cal.App.3d 892, 284 Cal. Rptr. 824, 827 (1991).

Innomed next contends that its breach of the Distribution Agreement was excused by ALZA's alleged price discrimination, and therefore ALZA cannot rely on Innomed's default to argue that ALZA was entitled to terminate the Distribution Agreement. We decline to address this

---

district court's jury instructions on the Robinson–Patman Act claim and affirms that aspect of the judgment, and this summary order disposes of the remainder of Innomed's contentions on appeal.

**2.** In accordance with the choice-of-law provision in the Distribution Agreement, the district court applied California law in interpreting its terms.

challenge. In light of the jury's finding that no price discrimination occurred, and our holding in the accompanying opinion that Innomed is not entitled to a new trial on its Robinson–Patman Act claims, Innomed's contention that its breach was excused by the alleged price discrimination is moot.[3] *See Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 115 (2d Cir.2002) (declining to address challenge to summary judgment ruling because it was mooted by the jury's verdict).

Innomed also asserts that, in terminating the Distribution Agreement, ALZA breached the parties' January 26 agreement, in which ALZA promised to allow Innomed to pursue the assignment with AHP, because the termination of the Distribution Agreement effectively destroyed Innomed's ability to assign its rights to AHP. Because the January 26 agreement was never memorialized in writing, Innomed must point to evidence in the record as to, *inter alia,* the terms of the oral contract and the terms that ALZA allegedly breached. *See Careau & Co. v. Sec. Pacific Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 272 Cal.Rptr. 387, 395 (1990); *see also Khajavi v. Feather River Anesthesia Med. Group,* 84 Cal.App.4th 32, 100 Cal. Rptr.2d 627, 646–47 (2000). Innomed has failed to proffer any evidence as to the terms of the January 26 agreement, so it is impossible to determine whether ALZA breached any of the terms of the agreement when it terminated the Distribution Agreement on March 26. *See Khajavi,* 100 Cal.Rptr.2d at 646–48 (holding that defendant did not breach oral agreement because, among other things, the plaintiff had not established that the term in question was part of the oral contract). There-

fore, no reasonable juror could conclude that ALZA breached the January 26 agreement without speculating as to the scope of ALZA's obligations under the contract. *See Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 502 (2d Cir.2001) (holding that grant of summary judgment is appropriate "where the nonmoving party adduces nothing more than speculation to support its claims").

Innomed also asserts that ALZA violated the implied covenants of good faith and fair dealing in both the Distribution Agreement and the January 26 agreement, and argues on appeal that material issues of disputed fact should have precluded summary judgment on these claims. Innomed has presented no evidence of bad faith or dishonest motives on ALZA's part, however, and thus cannot establish its claim. *See Sutherland v. Barclays Am./Mortgage Corp.,* 53 Cal.App.4th 299, 61 Cal.Rptr.2d 614, 623 (1997).

■ With respect to the tortious interference claim, Innomed argues that the district court wrongfully dismissed its breach of contract claims and therefore erred in dismissing its claim for tortious interference based on ALZA's termination of the Distribution Agreement. Because we affirm the district court's dismissal of the contract claims, we agree with the district court that ALZA's termination of the Agreement cannot constitute the wrongful act necessary to establish a claim for tortious interference with prospective economic advantage. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 49–50, 63 P.3d 937 (2003) (noting that plaintiff must es-

---

**3.** Innomed also argues that, even if its performance is not entirely excused by ALZA's alleged price discrimination, its debt to ALZA should be offset by the amount of the alleged price discrimination and that issues of fact

exist as to the amount of the offset. As this is essentially an argument that Innomed's performance should be excused by the amount of ALZA's purported antitrust violation, it is also moot.

tablish that defendant's wrongful act was proscribed by some "determinable legal standard," such as a statute or common law rule, in order to assert interference with prospective economic advantage).[4] We therefore affirm the district court's grant of summary judgment on this claim.

Finally, Innomed challenges a number of the district court's discovery rulings and its exclusion of certain pieces of evidence during the trial. We review the district court's evidentiary rulings for manifest error, *see Nora Beverages, Inc. v. Perrier Group of Am.,* 164 F.3d 736, 746 (2d Cir. 1998), and may overturn the court's admission or exclusion of evidence only if the rulings are arbitrary or irrational, *see Provost v. City of Newburgh,* 262 F.3d 146, 163 (2d Cir.2001). Having reviewed the record, we conclude that none of the court's rulings constituted manifest error or an abuse of discretion. *See In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 68–69 (2d Cir.2003).

For the reasons set forth above, the district court's judgment is AFFIRMED in all respects, except as to the court's jury instructions on Innomed's Robinson–Patman Act claim.

---

4. The district court applied California law to the claim for tortious interference, and the parties do not challenge that choice here. Moreover, both parties relied on California law in their submissions below. We therefore apply California law. *See, e.g., Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002) (applying law of state agreed upon by parties).